BURGER IRON COMPANY, APPELLANT, *v.* TRACY, TAX COMMISSIONER, APPELLEE.

[Cite as *Burger Iron Co. v. Tracy* (1998), 83 Ohio St.3d 102.]

(No. 97–1214—Submitted June 10, 1998—Decided September 16, 1998.)

*Jones, Day, Reavis & Pogue* and *John C. Duffy, Jr.*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Richard C. Farrin*, Assistant Attorney General, for appellee.

---

MOYER, C.J.  Pursuant to R.C. 5733.01(A), a tax is levied upon domestic and foreign corporations for the privilege of exercising their corporate franchises in Ohio.  R.C. 5733.05 provides two bases for the calculation of the corporate franchise tax: the net worth basis and the net income basis.  The tax due is the greater of the two amounts.  R.C. 5733.06.

The issue before us relates to the calculation of tax under the net worth basis pursuant to the language of R.C. 5733.05(A) as it read during the tax years here at issue.[1]  During those tax years, corporations which were taxable under the net worth method and which owned property located both within and without the state were required to apportion net worth so that the portion of net worth attributable to Ohio could be determined.  The calculation compared net worth "attributable to" the state to total net worth.  R.C. 5733.05(A).

Pursuant to former R.C. 5733.05(A), when net worth included the value of intangible property in the form of stock or debt in a subsidiary corporation, and the parent corporation owned fifty-one percent or more of the common stock of the subsidiary to be valued, special situsing provisions applied.  The relevant statutory language provided:

"In determining the value of intangible property, including capital investments, owned or used in this state by either a domestic or foreign corporation, the commissioner shall be guided by sections 5709.02 and 5709.03 of the Revised Code, except that *investments in the capital stock of* or loans and advances to *subsidiary corporations at least fifty-one per cent of whose common stock is owned by the reporting corporation shall be allocated in and out of state in accordance with the value of physical property in and out of the state representing such investments*, loans, and advances."  (Emphasis added.)  Sub.H.B. No. 428, 141 Ohio Laws, Part II, 4165, 4168.

Thus, during the relevant periods in this case, corporations which owned a minimum of fifty-one percent of the stock of a subsidiary were required to "situs" that stock as being either within or without Ohio based on the value of the subsidiaries' physical property in and out of Ohio. See, generally, *Armour & Co. v. Kosydar* (1976), 46 Ohio St.2d 450, 75 O.O.2d 502, 349 N.E.2d 301.

In the case at bar, the reporting corporate taxpayer is BICO. It owns more than fifty-one per cent of the common stock of BICO MI. BICO does not, however, own any of the common stock of any of the so-called second-tier

---

1.  The General Assembly has amended R.C. 5733.05 and removed the language at issue in this case.  Am.Sub.H.B. No. 215, effective September 29, 1997.

corporations. Thus, on its face, it appears that the value of physical property of the second-tier corporations does not fall within the scope of the above-emphasized statutory language, as the statute by its terms refers only to subsidiary corporations "at least fifty-one percent of whose *common stock* is owned" by the taxpayer. None of the common stock of the six second-tier corporations in this case is owned by taxpayer BICO.

Indeed, until 1992, even the Tax Commissioner looked solely to the property of first-tier subsidiaries, as evidenced by a 1992 policy paper prepared within the Department of Taxation. In that document it was noted that "prior to the *Cliffs* [*Internatl., Inc. v. Limbach* (Mar. 24, 1989), BTA No. 87–H–51 through 87–H–54, unreported] decision, the Department's audit position was that the presence of substantial physical assets within a second or third tier subsidiary had absolutely no bearing on how we would situs the [taxpayer's] investment in the first tier subsidiary (whether or not the first tier subsidiary owned physical assets)."

The commissioner now argues, however, that his "look-through" methodology is justified based on the fact that BICO, as sole owner of the "first-tier" subsidiary company, *i.e.*, BICO MI, which solely owns the "second-tier" Ohio companies, has *control* of both the first- and second-tier subsidiaries. The commissioner's position has its origins in the *Cliffs* BTA decision, *supra,* which concluded that where a reporting parent corporation *indirectly* owned a lower-tier subsidiary, "the investment of [the parent corporation in the first-tier subsidiary] should have been allocated in and out of state on the basis of the value of physical property in and out of state of the [second-tier corporation] *representing* such investments, loans, and advances." (Emphasis added.) *Cliffs Internatl., Inc.* Following this reasoning, the commissioner argues that the special situsing provision of former R.C. 5733.05(A) as to subsidiaries required situsing based upon the location of the physical property "representing such investment," and that the property of all six of the second-tier Ohio corporations "represents" BICO's investment in BICO MI.

The BTA accepted the commissioner's position and concluded that former R.C. 5733.05(A) required a reporting corporation to review the physical property of all corporations in which it had a fifty-one percent or greater *interest* and consider the location of the physical property of each of those subsidiary corporations. The BTA rejected BICO's argument that, by definition, it had only one subsidiary during the tax years in question, that being BICO MI, noting that BICO has "held these corporations out to be subsidiary corporations, albeit 'second tier,' as control is vested through ownership of an intermediary corporation." The BTA concluded that "the appropriate focus is the ownership relationship between the parent and its subsidiaries, whether the subsidiaries are first tier subsidiaries, second tier subsidiaries or farther down the ownership chain."

However, the plain language of the statute provides the determinative inquiry. Neither the indirect *control* nor *interest* of a reporting corporate taxpayer is relevant, but rather it is *ownership of common stock* that controls. We agree with BICO that, had the General Assembly wanted the value of a domestic corporation's franchise to be measured by physical property belonging to subsidiary corporations whose capital stock the reporting taxpayer did not own, it would have amended the statute to expressly add this requirement. In light of the clear language of the statute, we believe the BTA exceeded the scope of its authority in substituting its own views as to the appropriate focus for the special allocation provision and determining that R.C. 5733.05(A) requires consideration of physical property owned by other affiliates.

In this case BICO is the parent and BICO MI is the subsidiary. BICO has not made any investment in the capital stock of any of the subsidiaries of BICO MI, let alone a fifty-one percent or greater investment. Pursuant to the former statute, it is the investment of BICO in BICO MI that is to be allocated to Ohio, not BICO MI's investment in its six subsidiaries. Former R.C. 5733.05(A) simply does not provide for a "look through" to the investment and physical property of second- and lower-tier subsidiaries.

Accordingly, we hold that in calculating franchise tax under the net worth basis pursuant to R.C. 5733.05, the special situsing rule found in former R.C. 5733.05(A) for "investments in the capital stock of or loans and advances to subsidiary corporations at least fifty-one per cent of whose common stock is owned by the reporting corporation" simply is not applicable to investments in the stock of a corporation associated with a reporting corporate taxpayer where the reporting corporate taxpayer fails to own at least fifty-one percent of the common stock of the associated corporation.

The language of R.C. 5733.05(A) is clear, and BICO is entitled to the relief it seeks. We therefore need not consider its contention that the commissioner is estopped from asserting a deficiency assessment based on the procedural facts of this case and the instructional language included with the franchise tax return.

Accordingly, the decision of the BTA upholding the commissioner's assessments is unreasonable and unlawful, and it is reversed, and the cause is remanded for implementation of our decision.

*Decision reversed*
*and cause remanded.*

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.