[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 102.]

BURGER IRON COMPANY, APPELLANT, *v.* TRACY, TAX COMMISSIONER,

APPELLEE.

[Cite as *Burger Iron Co. v. Tracy*, 1998-Ohio-131.]

*Taxation—Franchise tax—Calculation of tax under the net worth basis pursuant to the language of R.C. 5733.05(A) as it read during tax years 1990 through 1993.*

In calculating franchise tax under the net worth basis pursuant to R.C. 5733.05, the special situsing rule found in former R.C. 5733.05(A) for "investments in the capital stock of or loans and advances to subsidiary corporations at least fifty-one per cent of whose common stock is owned by the reporting corporation" is not applicable to investments in the stock of a corporation associated with a reporting corporate taxpayer where the reporting corporate taxpayer fails to own at least fifty-one percent of the common stock of the associated corporation.

(No. 97-1214—Submitted June 10, 1998—Decided September 16, 1998.)

APPEAL from the Board of Tax Appeals, Nos. 95-M-1078 and 96-M-48.

———————————

{¶ 1} Taxpayer Burger Iron Company ("BICO") is an Ohio corporation which, prior to 1989, operated a number of divisions. Among those divisions was BICO Michigan, Inc. ("BICO MI"), which is in the business of processing steel plate and is located in Michigan. Prior to 1989, BICO also operated six divisions located in Ohio.

{¶ 2} In 1989, BICO reorganized its corporate structure. BICO MI was incorporated in the state of Michigan. One hundred percent of BICO MI stock is owned by BICO. Each of the prior BICO divisions operating in Ohio was separately incorporated as an Ohio corporation, creating BICO Akron, Inc., Burger Structural

Steel Company, BICO Dayton, Inc., Burger Erection Company, Burger Iron Management Company, and Ohio BICO, Inc. BICO MI owns one hundred percent of the stock of these six Ohio corporations. Accordingly, BICO owns one hundred percent of BICO MI (the "first-tier subsidiary"), and BICO MI owns one hundred percent of the stock of the six Ohio corporations (the "second-tier subsidiaries").

{¶ 3} As well as the stock of the six second-tier subsidiaries incorporated in Ohio, BICO MI owns tangible property, both real and personal, in Michigan, but owns no tangible property in Ohio. The six Ohio corporations own tangible property in Ohio, and have themselves paid Ohio franchise tax since the 1989 reorganization.

{¶ 4} BICO filed Ohio franchise tax returns for years 1990, 1991, 1992, and 1993 and reported significant investments in subsidiaries. However, in calculating its net worth property factor in each year, BICO sitused all its investments in subsidiaries as being outside the state. As BICO held only a minimal amount of cash within the state and, as a quiescent holding company, had earned no business income during the years in issue, BICO's property and business ratios used in calculating net worth capable of taxation by the state of Ohio were minimal. Multiplying the net worth apportioned to Ohio (as calculated by the ratios) by the appropriate tax rate, BICO calculated a tax due that was less than the minimum tax due under the net worth method for each year under consideration. Thus, BICO reported and paid a franchise tax each year in the amount of fifty dollars, the statutory minimum.

{¶ 5} Upon audit, BICO provided the Tax Commissioner's agent a detailed breakdown of its investment account. From that breakdown, the agent determined the location of physical assets owned by BICO MI as well as the location of physical assets owned by the six Ohio corporations solely owned by BICO MI. Concluding that BICO MI's subsidiaries owned tangible physical property within the state of Ohio, the agent then recalculated BICO's investment within the state of Ohio by "looking through" BICO's investment in BICO MI to the physical property held by BICO MI's subsidiaries. By including value attributable to those investments with a

physical presence within the state, the agent increased the property factor for each year, resulting in significantly increased tax assessments. For tax year 1990, for example, the increased factor resulted in an increase of assessed tax from fifty dollars to $37,828.44 (without penalty). Those increases were incorporated into final determinations of the commissioner after BICO submitted petitions for reassessment of franchise tax.

{¶ 6} In summary, BICO calculated franchise tax due the state as if all its investments in subsidiaries had a situs outside the state for franchise tax purposes, *i.e.*, in Michigan, while the commissioner reviewed not only BICO's ownership interest in BICO MI, the first-tier subsidiary, but also BICO's derivative interest in the corporations owned by BICO MI, and included the physical property owned by the second-tier subsidiaries in calculating the property factor applicable to BICO.

{¶ 7} BICO appealed to the Board of Tax Appeals ("BTA") from the commissioner's final determinations denying BICO's petition for reassessment of franchise tax for the years 1990, 1991, 1992, and 1993. The BTA consolidated the appeals, and ultimately upheld the assessments made by the commissioner, thereby affirming application of the commissioner's "look through" rule.

{¶ 8} The cause is before this court upon an appeal as of right.

_____

*Jones, Day, Reavis & Pogue* and *John C. Duffy, Jr.*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Richard C. Farrin*, Assistant Attorney General, for appellee.

_____

**MOYER, C.J.**

{¶ 9} Pursuant to R.C. 5733.01(A), a tax is levied upon domestic and foreign corporations for the privilege of exercising their corporate franchises in Ohio. R.C. 5733.05 provides two bases for the calculation of the corporate franchise tax: the net

worth basis and the net income basis.  The tax due is the greater of the two amounts.  R.C. 5733.06.

{¶ 10} The issue before us relates to the calculation of tax under the net worth basis pursuant to the language of R.C. 5733.05(A) as it read during the tax years here at issue.[1]  During those tax years, corporations which were taxable under the net worth method and which owned property located both within and without the state were required to apportion net worth so that the portion of net worth attributable to Ohio could be determined.  The calculation compared net worth "attributable to" the state to total net worth.  R.C. 5733.05(A).

{¶ 11} Pursuant to former R.C. 5733.05(A), when net worth included the value of intangible property in the form of stock or debt in a subsidiary corporation, and the parent corporation owned fifty-one percent or more of the common stock of the subsidiary to be valued, special situsing provisions applied.  The relevant statutory language provided:

"In determining the value of intangible property, including capital investments, owned or used in this state by either a domestic or foreign  corporation, the commissioner shall be guided by sections 5709.02 and 5709.03 of the Revised Code, except that *investments in the capital stock of* or loans and advances to *subsidiary corporations at least fifty-one per cent of whose common stock is owned by the reporting corporation shall be allocated in and out of state in accordance with the value of physical property in and out of the state representing such investments,* loans, and advances."  (Emphasis added.)  Sub.H.B. No. 428, 141 Ohio Laws, Part II, 4165, 4168.

{¶ 12} Thus, during the relevant periods in this case, corporations which owned a minimum of fifty-one percent of the stock of a subsidiary were required to "situs" that stock as being either within or without Ohio based on the value of the

_____

1. The General Assembly has amended R.C. 5733.05 and removed the language at issue in this case.  Am.Sub.H.B. No. 215, effective September 29, 1997.

subsidiaries' physical property in and out of Ohio. See, generally, *Armour & Co. v. Kosydar* (1976), 46 Ohio St.2d 450, 75 O.O.2d 502, 349 N.E.2d 301.

{¶ 13} In the case at bar, the reporting corporate taxpayer is BICO. It owns more than fifty-one per cent of the common stock of BICO MI. BICO does not, however, own any of the common stock of any of the so-called second-tier corporations. Thus, on its face, it appears that the value of physical property of the second-tier corporations does not fall within the scope of the above-emphasized statutory language, as the statute by its terms refers only to subsidiary corporations "at least fifty-one percent of whose *common stock* is owned" by the taxpayer. None of the common stock of the six second-tier corporations in this case is owned by taxpayer BICO.

{¶ 14} Indeed, until 1992, even the Tax Commissioner looked solely to the property of first-tier subsidiaries, as evidenced by a 1992 policy paper prepared within the Department of Taxation. In that document it was noted that "prior to the *Cliffs* [*Internatl., Inc. v. Limbach (*Mar. 24, 1989), BTA No. 87-H-51 through 87-H-54, unreported] decision, the Department's audit position was that the presence of substantial physical assets within a second or third tier subsidiary had absolutely no bearing on how we would situs the [taxpayer's] investment in the first tier subsidiary (whether or not the first tier subsidiary owned physical assets)."

{¶ 15} The commissioner now argues, however, that his "look-through" methodology is justified based on the fact that BICO, as sole owner of the "first-tier" subsidiary company, *i.e.*, BICO MI, which solely owns the "second-tier" Ohio companies, has *control* of both the first- and second-tier subsidiaries. The commissioner's position has its origins in the *Cliffs* BTA decision, *supra*, which concluded that where a reporting parent corporation *indirectly* owned a lower-tier subsidiary, "the investment of [the parent corporation in the first-tier subsidiary] should have been allocated in and out of state on the basis of the value of physical property in and out of state of the [second-tier corporation] *representing* such

investments, loans, and advances." (Emphasis added.) *Cliffs Internatl., Inc.* Following this reasoning, the commissioner argues that the special situsing provision of former R.C. 5733.05(A) as to subsidiaries required situsing based upon the location of the physical property "representing such investment," and that the property of all six of the second-tier Ohio corporations "represents" BICO's investment in BICO MI.

{¶ 16} The BTA accepted the commissioner's position and concluded that former R.C. 5733.05(A) required a reporting corporation to review the physical property of all corporations in which it had a fifty-one percent or greater *interest* and consider the location of the physical property of each of those subsidiary corporations. The BTA rejected BICO's argument that, by definition, it had only one subsidiary during the tax years in question, that being BICO MI, noting that BICO has "held these corporations out to be subsidiary corporations, albeit 'second tier,' as control is vested through ownership of an intermediary corporation." The BTA concluded that "the appropriate focus is the ownership relationship between the parent and its subsidiaries, whether the subsidiaries are first tier subsidiaries, second tier subsidiaries or farther down the ownership chain."

{¶ 17} However, the plain language of the statute provides the determinative inquiry. Neither the indirect *control* nor *interest* of a reporting corporate taxpayer is relevant, but rather it is *ownership of common stock* that controls. We agree with BICO that, had the General Assembly wanted the value of a domestic corporation's franchise to be measured by physical property belonging to subsidiary corporations whose capital stock the reporting taxpayer did not own, it would have amended the statute to expressly add this requirement. In light of the clear language of the statute, we believe the BTA exceeded the scope of its authority in substituting its own views as to the appropriate focus for the special allocation provision and determining that R.C. 5733.05(A) requires consideration of physical property owned by other affiliates.

{¶ 18} In this case BICO is the parent and BICO MI is the subsidiary. BICO has not made any investment in the capital stock of any of the subsidiaries of BICO

MI, let alone a fifty-one percent or greater investment. Pursuant to the former statute, it is the investment of BICO in BICO MI that is to be allocated to Ohio, not BICO MI's investment in its six subsidiaries. Former R.C. 5733.05(A) simply does not provide for a "look through" to the investment and physical property of second- and lower-tier subsidiaries.

{¶ 19} Accordingly, we hold that in calculating franchise tax under the net worth basis pursuant to R.C. 5733.05, the special situsing rule found in former R.C. 5733.05(A) for "investments in the capital stock of or loans and advances to subsidiary corporations at least fifty-one per cent of whose common stock is owned by the reporting corporation" simply is not applicable to investments in the stock of a corporation associated with a reporting corporate taxpayer where the reporting corporate taxpayer fails to own at least fifty-one percent of the common stock of the associated corporation.

{¶ 20} The language of R.C. 5733.05(A) is clear, and BICO is entitled to the relief it seeks. We therefore need not consider its contention that the commissioner is estopped from asserting a deficiency assessment based on the procedural facts of this case and the instructional language included with the franchise tax return.

{¶ 21} Accordingly, the decision of the BTA upholding the commissioner's assessments is unreasonable and unlawful, and it is reversed, and the cause is remanded for implementation of our decision.

*Decision reversed*
*and cause remanded*.

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____